IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| **MICHEAL CALLENDER** and **CRYSTAL GAYLE OWENS**, *Plaintiffs,* | § § § § | |
| v. | § § | Case No. |
| **TRENT JONES**, in his individual capacity; **DAKOTA MARTINEZ**, in his individual capacity; **MICHAEL CRAIG FINEGAN**, in his individual capacity; **JASON PASKE**, in his individual capacity; **VICTOR WHITE**, in his individual capacity; **KAYLA HEMPERLY**, in her individual capacity; and **EDWARD C. FISHER III**, in his individual capacity, *Defendants* | § § § § § § § § § § § § § § § § § § § | |

## COMPLAINT

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................ ii

JURISDICTION AND VENUE ........................................................................... 1

PARTIES ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................... 2

COUNT I FOURTH AMENDMENT — UNLAWFUL SEIZURE FROM HOME .................... 9

COUNT II FOURTH AMENDMENT — EXCESSIVE FORCE................................................ 10

COUNT III FOURTH AMENDMENT — UNLAWFUL PRESENCE ON CURTILAGE........ 11

COUNT IV FOURTH AMENDMENT — UNLAWFUL SEIZURE........................................... 11

COUNT V FOURTH AMENDMENT — UNLAWFUL SEARCH (FRANKS VIOLATION) . 12

COUNT VI FIRST AMENDMENT — RETALIATION ........................................................... 15

COUNT VII FOURTH AMENDMENT — UNLAWFUL ARREST OF PLAINTIFF OWEN.  16

COUNT VIII FOURTH AMENDMENT — FABRICATION OF EVIDENCE......................... 17

COUNT IX FIRST AMENDMENT — RETALIATION ........................................................... 18

COUNT X FOURTH AMENDMENT — MALICIOUS PROSECUTION ............................... 19

COUNT XI FOURTH AMENDMENT — FALSE ARREST OF PLAINTIFF CALLENDER . 20

DAMAGES............................................................................................................ 21

PRAYER FOR RELIEF ...................................................................................... 22

JURY DEMAND .................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Brendlin v. California*, 551 U.S. 249 (2007) ........................................................................ 11

*Caniglia v. Strom*, 593 U.S. 194 (2021) .............................................................................. 12

*Florida v. Jardines*, 569 U.S. 1 (2013) ............................................................................... 11

*Franks v. Delaware*, 438 U.S. 154 (1978) ........................................................................... 13

*Gonzalez v. Trevino*, 602 U.S. 653 (2024) ......................................................................... 19

*Graham v. Connor*, 490 U.S. 386 (1989) ............................................................................ 10

*Horton v. California*, 496 U.S. 128 (1990) ......................................................................... 16

*Nieves v. Bartlett*, 587 U.S. 391 (2019) ............................................................................. 16

*Payton v. New York*, 445 U.S. 573 (1980) ............................................................................ 9

*Thompson v. Clark*, 596 U.S. 36 (2022) .............................................................................. 19

*United States v. Walker*, 799 F.3d 1361 (11th Cir. 2015) ................................................. 11

*Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018) ......................................................... 13, 17

**Statutes**

28 U.S.C. § 1391(b) ................................................................................................................ 1

28 U.S.C. §§ 1331 ................................................................................................................... 1

42 U.S.C. § 1983 .................................................................................................................... 1

1.      This case involves a four-hour armed siege of Plaintiffs' home by Polk County and Montgomery County officers, culminating in warrantless seizures, false arrests, and criminal prosecution based on fabricated evidence. The warrant supporting the search was obtained through sworn statements that Plaintiff Crystal Owens was "being held hostage" and "possibly injured or deceased"—signed nine minutes after she walked out of the residence, announced she was okay, and returned inside voluntarily.

2.      Officers admitted on body-worn camera they lacked probable cause. Lieutenant Paske stated: "There's nothing to get a warrant on right now." Lieutenant Finegan agreed. They proceeded anyway, surrounding the home with armed personnel, cutting electrical power, and summoning a SWAT team.

3.      All criminal charges against both Plaintiffs were dismissed.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. § 1391(b). Claims arise under 42 U.S.C. § 1983 and the Fourth and First Amendments.

## PARTIES

5.      Plaintiff MICHEAL CALLENDER is a resident of Polk County, Texas.

6.      Plaintiff CRYSTAL OWENS is a resident of Polk County, Texas.

7.      Defendant TRENT JONES (Badge #832) was a Deputy with the Polk County Sheriff's Office, acting under color of state law.

8.      Defendant DAKOTA MARTINEZ (Badge #820) was a Sergeant with the Polk County Sheriff's Office, acting under color of state law.

9.      Defendant MICHAEL CRAIG FINEGAN (Badge #804) was a Lieutenant with the Polk County Sheriff's Office, acting under color of state law.

10.     Defendant JASON PASKE (Badge #816) was a Lieutenant with the Polk County Sheriff's Office, acting under color of state law.

11.     Defendant VICTOR WHITE (Badge #827) was a Sergeant with the Polk County Sheriff's Office, acting under color of state law.

12.     Defendant KAYLA HEMPERLY (Badge #805) was a Deputy with the Polk County Sheriff's Office, acting under color of state law.

13.     Defendant EDWARD C. FISHER III was a Deputy with the Montgomery County Sheriff's Office assigned to the SWAT team, acting under color of state law.

## STATEMENT OF FACTS

### The Anonymous 911 Call

14.     On June 18, 2024, at approximately 12:33 a.m., a 911 call reported a possible assault at 346 Lakecrest, Livingston, Texas. The caller was a woman named Danielle, who used Chase Smith's phone. Danielle stated: "I don't want to be tied into this at all." She left the scene before officers arrived and was never located, interviewed, or verified by law enforcement.

15.     Defendant Jones called the number from which the 911 call was placed. He spoke only with Chase Smith—not Danielle. Chase explicitly told Jones that he

did not witness any assault. When Corporal Boyer later asked Jones whether Chase and his fiancée Deacon "saw the assault take place," Jones admitted: "No." Jones further admitted to his supervisors: "we don't have any witnesses that actually witnessed an assault."

16.    Despite knowing the call was anonymous and that no witness actually saw an assault, Defendant Jones' official Affidavit for Probable Cause attributes the 911 call to "the caller, later identified as Chase Smith." This was false. The caller was Danielle, not Chase. Jones concealed Danielle's existence—and the fact that she could never be located—to hide that the entire basis for the four-hour siege was an uncorroborated anonymous tip from an unreachable witness.

17.    The neighbor Alan was the only on-scene witness interviewed. Alan told Jones on body-worn camera that he:

> (a) never saw Callender lay hands on Owens;
>
> (b) never saw any injuries on Owens;
>
> (c) did not witness or hear any assault;
>
> (d) was not aware of any firearms; and
>
> (e) did not want to make a statement or press charges. Despite this, Jones told Lieutenant Finegan that "Alan said that Mike gets mean when drunk and has put hands on her before." Alan never said this. Jones fabricated witness testimony to manufacture probable cause.

**Officers Arrive and License Is Revoked**

18.    Defendants Martinez and Jones arrived at approximately 12:51 a.m. Plaintiffs were inside their home with the door open. Officers never announced themselves as law enforcement and approached with lights off. Upon seeing unknown individuals approach at night, Plaintiffs closed and locked their front door—exercising dominion over their constitutionally protected residence. Through the door and window, both Plaintiffs repeatedly told officers to leave and obtain a warrant. Both plaintiffs instructed: "Get a warrant. You're trespassing on my property."

19.    Defendant Martinez responded: "I don't need a warrant." When Plaintiff Callender insisted Martinez did need a warrant, Martinez repeated: "No, I don't need a warrant." Both Martinez and Jones then attempted to physically open the locked door—attempted warrantless entries into Plaintiffs' home.

20.    Once the officers made contact with both Plaintiffs, who did not want to cooperate without a warrant, and demanded that Jones and Martinez leave, any implied license was revoked or expired. Any continued presence on the curtilage violated the Fourth Amendment.

**Officers Admit Lack of Probable Cause**

21.    Lieutenants Finegan and Paske arrived as supervisors. On body-worn camera, Defendant Paske stated: "There's nothing to get a warrant on right now." Defendant Finegan agreed: "There's nothing to get a warrant for." Despite this admission, officers remained for over three more hours.

**The Siege**

22.     For more than four hours, officers surrounded the residence with armed personnel, deployed spotlights, disconnected electrical power, summoned Montgomery County SWAT, used PA systems demanding Plaintiffs exit, and created conditions that confined Plaintiffs inside their home. Any attempt to leave would have resulted in immediate arrest.

23.     Plaintiffs covered their window with a blanket because Defendant Martinez was shining his flashlight into their small dwelling, giving officers a view of their bed and most of the interior. Plaintiffs then slept from approximately 1:30 a.m. to 3:56 a.m.

## The "Gunshots" That Weren't

24.     At approximately 1:11 a.m., Plaintiffs secured the blanket with a staplegun. Jones and Martinez claimed this was "possible gunshots." If officers genuinely believed someone was being shot, exigent circumstances would require immediate entry. Instead, officers waited nearly three more hours. This delay proves officers knew no emergency existed. Defendant Martinez acknowledged the sound "came from a distance." Defendant Jones admitted: "I don't see any reason for him to have a nail gun inside."

25.     Throughout the siege, officers repeatedly admitted they lacked any genuine basis to believe an emergency existed. Defendant Martinez admitted he was "not 100%" on whether Plaintiff Owens had any injuries. Officers stated: "We're showing a whole lot of not shit right now . . . they're saying we don't got it . . . enough to get in." When asked whether witnesses saw the assault take place, Defendant

Jones admitted: "No." Officers continued to walk up to the door and acknowledged not seeing any blood or evidence of a crime. No officer could articulate specific facts demonstrating Plaintiff Owens was in danger—because she repeatedly told them she was not.

## Crystal Denies Any Assault

26.    When Plaintiff Owens awoke, she repeatedly told officers she was okay and did not need assistance. At approximately 3:53 a.m., after officers said they would leave if they confirmed Crystal was okay, she stepped outside and announced: "I am Crystal, and I am OK." She demonstrated she was not a hostage—she walked out voluntarily, spoke freely, demanded they leave, and returned inside. At no point did she request assistance or appear injured.

## The Fabricated Warrant Affidavit

27.    At 3:49 a.m., Defendant Hemperly told officers she was finalizing the warrant affidavit.

28.    At 3:54 a.m., Defendant Finegan radioed dispatch: "CRYSTAL CAME TO FRONT DOOR . . . ADV HER NAME AND THAT SHE IS OK." Hemperly heard this over the radio and directly from Finegan in a subsequent phone call. Under Finegan's direction, Hemperly moved forward with finalizing and signing the affidavit for a search warrant.

29.    The sworn affidavit stated, "Crystal Owens is being held hostage in the residence and is possibly injured or deceased." This statement was demonstrably

false—signed nine minutes after Crystal demonstrated the opposite. Hemperly had the judge sign the search warrant at approximately 4:03 a.m.

## The Seizure of Plaintiff Callender

30.    SWAT arrived at approximately 4:00 a.m. During this time, both Plaintiffs were shouting at police, criticizing their conduct and demanding they leave their property and stop violating their rights. In response, Defendant Fisher stated to Jones: "I'm gonna snatch his ass."

31.    At approximately 4:08 a.m., Plaintiffs came to the door. Plaintiff Callender stood inside the threshold of his home. Without consent and without a valid warrant authorizing his arrest, Defendants Fisher, Paske, Jones, and Martinez physically tackled and seized Plaintiff Callender, reaching across the threshold into the constitutionally protected interior.

## The Seizure and Injury of Plaintiff Owens

32.    Plaintiff Owens was standing on the porch when officers grabbed Plaintiff Callender. The front door opens outward. When officers swung the door open, they knocked Plaintiff Owens off the porch and onto the ground in the middle of the officers tackling Plaintiff Callender. She sustained bruises on her arms and legs. Officers never asked if she was okay or called EMS. The supposed domestic violence victim they claimed to be rescuing was injured by her rescuers.

## The Search: A Fishing Expedition

33.     By the time officers executed the search warrant, both Plaintiffs were in custody. Plaintiff Callender was handcuffed in a patrol car. Plaintiff Owens was standing outside, visibly uninjured (except for injuries caused by defendants), denying any assault. There was no hostage to rescue and no body to recover—the entire basis for the warrant had been disproven before they ever went inside—and they all knew it.

34.     When Plaintiff Owens asked Defendant Finegan what they were searching for, he replied: "I don't know yet. We'll see what we find." Officers executing the warrant admitted they did not know what the warrant was based on or what they were searching for. This was not a search for evidence of a specific crime—it was a fishing expedition to find anything that might justify what officers had already done.

## The Fabricated Black Eye

35.     Officers claimed in sworn affidavits that Plaintiff Owens had a "visible black eye" with a "ring of black" around her right eye. Body-worn camera disproved this. The booking photograph, taken at the jail that same morning, shows no such injury. Plaintiff Owens is smiling. The "black eye" was fabricated to manufacture probable cause.

## The Fabricated Marijuana Charge

36.     After Plaintiff Owens was detained, she confronted Defendant White about violating her Fourth Amendment rights. He was in her home, denying her

entry. She threatened to sue him. He responded: "That's fine. Not the first time." Defendant White then claimed to observe "marijuana" while unlawfully present on the curtilage, hours after officers were without any implied license.

37.     Plaintiff Owens was arrested for possession of marijuana. White directed her arrest, to which Jones complied by handcuffing her while noting "possession is hard to prove." The supposed victim became a defendant because, according to White, he exercised discretion to arrest her because he did not like her "attitude" and challenged him about how he would feel if his constitutional rights were violated at his home. The evidence log confirms no marijuana was recovered— only paraphernalia. Officers fabricated a Class B marijuana charge to ensure Plaintiffs would be jailed rather than issued a citation for the Class C paraphernalia offense.

**Dismissal of All Charges**

38.     All criminal charges against both Plaintiffs terminated in their favor.

## COUNT I
## FOURTH AMENDMENT — UNLAWFUL SEIZURE FROM HOME
### (Plaintiff Callender Against Defendants Fisher, Paske, Jones, and Martinez)

39.     Plaintiffs incorporate all preceding paragraphs.

40.     Under *Payton v. New York*, 445 U.S. 573 (1980), the Fourth Amendment prohibits warrantless arrests inside a home absent consent or exigent circumstances. Plaintiff Callender was standing inside the threshold. He had not consented. No valid

warrant authorized his arrest. No exigent circumstances existed—as officers admitted.

41.    Defendants physically tackled and seized Plaintiff Callender, reaching across the threshold into the constitutionally protected interior.

42.    The law was clearly established. No reasonable officer could believe it lawful to forcibly seize an individual from inside his doorway after admitting on camera they lacked probable cause. Defendants' conduct caused harm.

## COUNT II
## FOURTH AMENDMENT — EXCESSIVE FORCE
### (Both Plaintiffs Against Defendants Fisher, Paske, Jones, and Martinez)

43.    Plaintiffs incorporate all preceding paragraphs.

44.    Under *Graham v. Connor*, 490 U.S. 386 (1989), courts assess reasonableness by examining: (1) severity of the crime; (2) whether the suspect poses an immediate threat; and (3) whether the suspect is actively resisting.

45.    All factors weigh against Defendants: Officers admitted they had nothing to get a warrant on. Plaintiffs were unarmed and posed no threat. Plaintiff Callender was standing still, demanding a warrant—constitutionally protected conduct. Plaintiff Owens was the alleged victim.

46.    Four officers tackled Plaintiff Callender, an unarmed man standing in his doorway. The same action knocked Plaintiff Owens off the porch, causing bruises to her arms and legs. Officers used significant force against non-threatening, non-resisting individuals.

47.    The law was clearly established. Defendants' conduct caused harm.

## COUNT III
## FOURTH AMENDMENT — UNLAWFUL PRESENCE ON CURTILAGE
### (Both Plaintiffs Against All Defendants)

48.     Plaintiffs incorporate all preceding paragraphs.

49.     Under *Florida v. Jardines*, 569 U.S. 1 (2013), the curtilage is part of the home for Fourth Amendment purposes. Officers have an implied license to approach and knock, but this license is limited to a brief "knock and talk"—approach, knock, wait briefly for a response, and leave. *United States v. Walker*, 799 F.3d 1361 (11th Cir. 2015).

50.     The implied license expired within minutes of arrival. Officers knocked, Plaintiffs responded, and Plaintiffs declined to speak further. The knock-and-talk purpose was complete. Plaintiffs then explicitly revoked any remaining license by repeatedly demanding officers leave and obtain a warrant.

51.     Officers remained for more than four hours on the curtilage after the license had both expired and been revoked, shining flashlights into windows, deploying personnel around the home, and making observations that formed the basis for charges.

52.     The law was clearly established. Defendants' conduct caused harm.

## COUNT IV
## FOURTH AMENDMENT — UNLAWFUL SEIZURE
### (Both Plaintiffs Against All Defendants)

53.     Plaintiffs incorporate all preceding paragraphs.

Page **11** of **23**

54.   A seizure occurs when a reasonable person would not feel free to leave. *Brendlin v. California*, 551 U.S. 249 (2007). For more than four hours, Plaintiffs were confined by the armed siege. They could not leave without arrest. Officers deployed armed personnel, spotlights, cut power, used PA systems, and summoned SWAT.

55.   No exigent circumstances or emergency aid exception justified this seizure. Under *Caniglia v. Strom*, 593 U.S. 194 (2021), the community caretaking exception does not extend to the home. Officers cannot claim emergency aid when:

   (a) the supposed victim repeatedly stated she was fine and demanded officers leave;

   (b) officers admitted they were "not 100%" on any injuries;

   (c) officers admitted they had "nothing to get a warrant on";

   (d) officers admitted "we don't have any witnesses that actually witnessed an assault"; and

   (e) officers waited nearly three hours after alleged "gunshots" instead of making immediate entry.

56.   The nearly three-hour delay between the alleged "gunshots" and any action demonstrates officers did not genuinely believe an emergency existed. The siege was not an emergency response—it was an attempt to coerce Plaintiffs into surrendering their constitutional rights.

57.   The law was clearly established. Defendants' conduct caused harm.

## COUNT V
## FOURTH AMENDMENT — UNLAWFUL SEARCH (FRANKS VIOLATION)
## (Both Plaintiffs Against Defendants Finegan, Hemperly, White, and Jones)

58.     Plaintiffs incorporate all preceding paragraphs.

59.     Under *Franks v. Delaware*, 438 U.S. 154 (1978), a warrant obtained through deliberate or reckless false statements violates the Fourth Amendment. Under *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018), material omissions of exculpatory information likewise violate the Fourth Amendment.

60.     Defendant Hemperly signed an affidavit claiming Plaintiff Owens "is being held hostage" and "is possibly injured or deceased"—nine minutes after Plaintiff Owens demonstrated the opposite. Defendant Finegan provided the false information. Defendant Jones swore to false statements including the fabricated "black eye" and false attribution of the anonymous tip to Chase Smith. Defendant White participated in the unlawful search and fabricated the marijuana observation.

61.     Defendants omitted material exculpatory facts from the warrant affidavit and criminal complaints:

> (a) The actual 911 caller, Danielle, was never located, interviewed, or verified—officers concealed that the sole alleged eyewitness could not be found;
>
> (b) Chase Smith explicitly told Jones he did not witness any assault;
>
> (c) Alan told Jones he never saw Micheal lay hands on Crystal and never saw any injuries;
>
> (d) Crystal repeatedly denied any assault throughout the encounter;
>
> (e) Crystal walked out freely at 3:53 a.m., demonstrating she was not a hostage;

(f)  Crystal gave consent to have her face photographed—and Defendant Jones declined, because he knew no black eye existed;

(g)  Officers questioned the existence of the black eye multiple times throughout the siege;

(h)  Officers admitted on body-worn camera: "There's nothing to get a warrant on right now" and "we don't have any witnesses that actually witnessed an assault."

62.    Under the corrected-affidavit analysis required by *Franks* and *Winfrey*, when the false statements are removed and the omitted truths are restored, what remains is only an anonymous tip from an unreachable caller who "didn't want to be tied into" the situation. Every witness—Chase, Alan, and Crystal herself—denied the allegations or saw nothing. No probable cause survives.

63.    Without the fabricated black eye, without corroboration from any witness, and with Crystal and Micheal repeatedly telling officers to leave and get a warrant, Defendants had no specific and articulable facts supporting probable cause. No reasonable officer could believe Crystal was "being held hostage" or "possibly deceased" when she had walked out freely, announced she was okay, and returned inside voluntarily—and when every available witness contradicted the anonymous tip.

64.    After Plaintiffs were seized and Defendant Finegan stood face-to-face with Plaintiff Owens—visibly uninjured, denying any assault—he directed officers to

execute the warrant anyway. When Plaintiff Owens asked what they were searching for, Finegan replied: "I don't know yet. We'll see what we find."

65.    The law was clearly established under *Franks* and *Winfrey*. Defendants' conduct caused harm.

## COUNT VI
## FIRST AMENDMENT — RETALIATION
### (Plaintiff Callender Against Defendants Fisher, Paske, Jones, Martinez, and Finegan)

66.    Plaintiffs incorporate all preceding paragraphs.

67.    Plaintiff Callender exercised his First Amendment rights by: (a) refusing to answer questions; (b) demanding officers leave and obtain a warrant; (c) verbally criticizing officers' conduct; and (d) refusing to consent to warrantless entry.

68.    At the moment Defendants tackled Plaintiff Callender, he was standing in his doorway exercising these First Amendment rights—verbally demanding a warrant and criticizing officers for violating his constitutional rights. The tackle was not a response to any threat or resistance; it was a response to his speech.

69.    Officers retaliated by: (a) physically tackling him while he was speaking; and (b) charging him with Interference with Public Duties—a charge that was dismissed because his only "crime" was exercising constitutional rights.

70.    Defendant Finegan personally signed the sworn Criminal Complaint initiating the Interference charge. The Complaint charged Plaintiff Callender with "refusing to communicate with law enforcement demands or allowing law

enforcement to gain entry into the home." This is not a crime—it is the exercise of Fourth and First Amendment rights.

71.     Under *Nieves v. Bartlett*, 587 U.S. 391 (2019), objective evidence of retaliation can rebut probable cause. Defendant Fisher stated on camera before the tackle: "I'm gonna snatch his ass." Defendant Finegan then formalized the retaliation by swearing under oath to initiate prosecution for constitutionally protected conduct.

72.     The law was clearly established. Defendants' conduct caused harm and would chill a person of ordinary firmness.

## COUNT VII
## FOURTH AMENDMENT — UNLAWFUL ARREST OF PLAINTIFF OWENS
### (Plaintiff Owens Against Defendants White, Jones, and Finegan)

73.     Plaintiffs incorporate all preceding paragraphs.

74.     Defendant White claimed to observe marijuana while unlawfully present on the curtilage. Under the plain view doctrine, officers must be lawfully present. *Horton v. California*, 496 U.S. 128 (1990). Because Defendant White's presence was unlawful under *Jardines*, any observation could not support probable cause.

75.     Moreover, the evidence log confirms no marijuana was found—only paraphernalia. Officers fabricated a marijuana charge.

76.     Defendant White arrested Plaintiff Owens—the supposed domestic violence victim—because she criticized him for violating her constitutional rights. White admitted as much—stating he was arresting her because of her attitude. Defendant Jones incorporated White's fabricated marijuana claim into the probable

cause affidavit. On information and belief, Defendant Finegan signed the sworn Criminal Complaint initiating prosecution against Plaintiff Owens.

77.    The law was clearly established. Defendants' conduct caused harm.

## COUNT VIII
## FOURTH AMENDMENT — FABRICATION OF EVIDENCE
### (Both Plaintiffs Against Defendants Finegan, Jones, Hemperly, and White)

78.    Plaintiffs incorporate all preceding paragraphs.

79.    Under *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018), fabrication of evidence violates the Fourth Amendment.

80.    Defendant Finegan personally signed a sworn Criminal Complaint against Plaintiff Callender containing the following false statements: (a) that Crystal had a "black eye"; (b) that "marijuana was discovered"; and (c) that Plaintiffs were "taken into custody without incident or hard to either"—when in fact Plaintiff Owens was knocked off the porch and injured.

81.    Defendants made the following additional materially false statements in sworn affidavits:

   (a) "Crystal Owens is being held hostage"—False. She had walked out freely and returned inside voluntarily.

   (b) "[Crystal Owens] is possibly injured or deceased"—False. She had just spoken to officers and demonstrated she was uninjured.

   (c) "[O]fficers observed a visible black eye" and "ring of black"—False. The booking photograph shows no injury.

(d) "[A] leafy green substance known to myself and other Deputies present as Marijuana"—False. The evidence log confirms no marijuana was recovered. Defendant White fabricated this observation while unlawfully present on the curtilage.

(e) "[T]he caller, later identified as Chase Smith"—False. The caller was Danielle, not Chase. Jones concealed that the actual caller was anonymous and could never be located.

(f) "Chase advised dispatch Micheal started beating Crystal"—False and misleading. Chase explicitly told Jones he did not witness any assault. Jones admitted: "we don't have any witnesses that actually witnessed an assault."

(g) "Micheal had told them if they do not leave, he would kill them"— False. The alleged threat was to Danielle, not Chase. Jones falsely attributed statements to Chase that Chase never made.

(h) "Micheal and Crystal were observed outside the residence. Upon our arrival they fled into the residence"—False. Plaintiffs were inside with the door open; they simply closed their door.

(i) Jones told Finegan that "Alan said Mike gets mean when drunk and has put hands on her before"—False. Alan never said this. Alan told Jones he never saw Micheal lay hands on Crystal.

82. The law was clearly established. Defendants' conduct caused harm.

## COUNT IX
## FIRST AMENDMENT — RETALIATION

**(Plaintiff Owens Against Defendants White, Jones, and Finegan)**

83.    Plaintiffs incorporate all preceding paragraphs.

84.    Plaintiff Owens exercised her First Amendment rights by: (a) refusing to answer questions; (b) demanding officers leave; (c) criticizing Defendant White for violating her constitutional rights; and (d) threatening to sue.

85.    Officers retaliated by: (a) arresting her for marijuana possession based on fabricated evidence; and (b) documenting a fabricated "black eye" to support charges.

86.    Under *Gonzalez v. Trevino*, 602 U.S. 653 (2024), objective evidence can demonstrate retaliatory motive. Defendant White arrested her immediately after she criticized him. The false "black eye" documentation constitutes objective evidence of differential treatment.

87.    The law was clearly established. Defendants' conduct caused harm and would chill a person of ordinary firmness.

## COUNT X
## FOURTH AMENDMENT — MALICIOUS PROSECUTION
### (Both Plaintiffs Against Defendants Finegan and Jones)

88.    Plaintiffs incorporate all preceding paragraphs.

89.    Under *Thompson v. Clark*, 596 U.S. 36 (2022), the Fourth Amendment protects against malicious prosecution—the initiation of criminal charges without probable cause.

90.    Defendant Finegan personally signed the sworn Criminal Complaints initiating prosecution against both Plaintiffs. Defendant Jones signed the Affidavits

for Probable Cause. These sworn documents contained materially false statements about the "black eye," the marijuana that was never recovered, the misattribution of the anonymous tip to Chase Smith, and the claim that Plaintiffs were taken into custody "without incident" when Plaintiff Owens was injured.

91.    The decision to charge Plaintiff Callender with Interference was malicious—his only "crime" was demanding that they leave his curtilage without a warrant. The sworn Criminal Complaint explicitly charged him with "refusing to communicate with law enforcement demands"—constitutionally protected conduct.

92.    The decision to charge Plaintiffs with marijuana possession rather than paraphernalia possession was malicious—officers ensured Plaintiffs would be jailed for marijuana that did not exist. Possession is a higher-level charge than paraphernalia. Paraphernalia would have required a citation rather than an arrest.

93.    All charges were terminated in favor of Plaintiffs. Defendants' conduct caused harm.

## COUNT XI
## FOURTH AMENDMENT — FALSE ARREST OF PLAINTIFF CALLENDER
### (Plaintiff Callender Against Defendants Fisher, Paske, Jones, Martinez, and Finegan)

94.    Plaintiffs incorporate all preceding paragraphs.

95.    Defendants arrested Plaintiff Callender for Interference with Public Duties and possession of marijuana. Neither charge was supported by probable cause.

96.    Texas Penal Code § 38.15 criminalizes interference with a peace officer's duties. But refusing to open one's door, refusing to communicate with police, and

refusing to allow warrantless entry are not crimes—they are constitutional rights. The Fourth Amendment guarantees the right to refuse warrantless entry. The Fifth Amendment guarantees the right to remain silent.

97.     Defendant Finegan's sworn Criminal Complaint proves no lawful basis existed for the arrest. The Complaint charged Plaintiff Callender with "barricading himself and Crystal Owens inside their home, refusing to communicate with law enforcement demands or allowing law enforcement to gain entry into the home." This describes the exercise of constitutional rights, not criminal conduct.

98.     The marijuana charge was equally baseless. The observation was made by Defendant White while unlawfully present on the curtilage, and the evidence log confirms no marijuana was recovered.

99.     The law was clearly established. No reasonable officer could believe it lawful to arrest a person for staying in his own home, remaining silent, and demanding a warrant. Defendants' conduct caused harm.

## DAMAGES

100.   As a direct result of Defendants' conduct, Plaintiffs suffered:

(a)  Deprivation of constitutional rights;

(b)  Unlawful seizure for more than four hours;

(c)  Physical force and injury;

(d)  Unlawful arrest, detention, and imprisonment;

(e)  Unlawful search;

(f)  Criminal prosecution on fabricated charges;

(g)  Mental and emotional distress;

(h)  Damage to reputation;

(i)  Loss of liberty; and

(j)  Legal fees defending against fabricated charges.

101.   Defendants' conduct was malicious, willful, and undertaken with reckless disregard for Plaintiffs' constitutional rights. Defendants are liable for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants and the following relief:

(A) Compensatory damages;

(B) Nominal damages for First Amendment violations;

(C) Punitive damages;

(D) Attorneys' fees and costs under 42 U.S.C. § 1988;

(E) Pre-judgment and post-judgment interest;

(F) A declaration that Defendants violated Plaintiffs' Fourth and First Amendment rights; and

(G) Such other relief as the Court deems proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,


**Grable PLLC**

*/s/ Brandon J. Grable*
**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@grable.law
12451 Starcrest Drive, Suite 206
San Antonio, Texas 78245
Telephone: (210) 963-5297
Facsimile: (210) 641-3332